SHUBERT v SCHELLIE

Docket No. 78390. Submitted January 23, 1985, at Lansing.—Decided
May 21, 1985. Leave to appeal applied for.

In 1974, Stanley V. Shubert conveyed a certain farm located in
Krakow Township, Presque Isle County, along with the per-
sonal property located on the premises, including the livestock
and farm machinery, to himself and Patricia A. Schellie and
Kenneth E. Schellie, his neice and her then husband, as joint
tennants with rights of survivorship. The deed reserved to
Shubert a full and complete life estate, including exclusive use
and control of the premises and profits and all other benefits
incidental to the life estate. On the date the deed was executed,
a herd of 17 cows and a bull were located on the premises, the
premises being used primarily for a beef cattle operation. In
1978, Shubert brought an equity action in Presque Isle Circuit
Court against Kenneth E. Schellie and Patricia A. Schellie,
seeking to have the 1974 quit claim deed set aside on the basis
that the deed had been secured by undue influence or through
a breach of a fiduciary relationship, had been given in ex-
change for little or no considerations and had been executed
under a mutual mistake of law and that Shubert lacked mental
capacity at the time the quit claim deed was executed. The
circuit court, Richard G. Boyce, found no merit in any of the
bases asserted by Shubert and entered a judgment of no cause
of action on the claim that the deed should be set aside.
Shubert appealed to the Court of Appeals. During the pendency
of that appeal, the parties entered into an agreement whereby
certain of the cattle in the now enlarged herd would be sold,
provided the herd size was not reduced below 30 cattle and that
no cows with calf be sold, and the proceeds of the sale would be
"placed in a joint account in escrow pending the outcome of the
litigation". An order to that effect was signed by the circuit

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 4] 4 Am Jur 2d, Animals § 5 et seq.

[3] 20 Am Jur 2d, Cotenancy and Joint Ownership § 3 et seq.

Severance or termination of joint tenancy by conveyance of divided
interest directly to self. 7 ALR4th 1268.

court and certain cattle were sold and the proceeds were placed in an escrow account.

The Court of Appeals affirmed the order which denied Shubert relief from the 1974 deed. Docket No. 45889, decided January 8, 1981 (unpublished). On January 10, 1981, Shubert died. Barbara Weiss, personal representative of Shubert's estate, filed a claim in the circuit court on behalf of the estate, seeking the funds being held in escrow and any personal property which had been owned by Shubert on the date of his death and was being held by the Schellies. The circuit court, Robert R. Ferguson, J., held that, since all the cattle comprising the increased herd, with the exception of one bull, were the offspring of the original herd given in the 1974 deed, and since the offspring would belong to the owners of the mother, in this case Shubert and the Schellies jointly with rights of survivorship, both the proceeds of the prior sale of cattle which was being held in escrow, with the exception of the proceeds of the sale of the bull, and all the cattle then being held would pass to the Schellies by reason of their joint tenancy with rights of survivorship. The court therefore ordered that the escrowed funds, except to the extent those funds represented the proceeds from the sale of the one after acquired bull, and all the farm machinery, except the machinery acquired by Shubert after the 1974 deed was executed, go to the Schellies, but that the proceeds of the sale of the bull and the after acquired farm equipment go to the estate. Weiss, as personal representative of the estate, appealed. *Held:*

The 1974 deed reserved to Shubert all rents and profits from the property during his lifetime. Any decision by Shubert to sell cattle, so long as the number in the herd was not reduced below the 18 in the herd on the date the deed was executed, was a decision which Shubert could make pursuant to his reservation of exclusive use and control of the property during his lifetime and, since the sale of beef cattle was the means by which this beef cattle operation could derive its profits, the funds realized from any sale would be profits within the meaning of the reservation in the deed. Accordingly, since the funds in the escrow account were profits for the 1979 sale of cattle to which Shubert alone was entitled, the funds in the escrow account should have been awarded to Shubert's estate.

Reversed.

SHEPHERD, P.J., concurred separately. While he agreed with the conclusions contained in the majority opinion, he pointed out that all the animals remaining in the herd on the date of Shubert's death passed to the Schellies as joint owners with

rights of survivorship under the rule that the owners of the female domestic animal become the owners of the offspring of the animal.

### OPINION OF THE COURT

1. DEEDS — PERSONAL PROPERTY — CATTLE.

A deed conveying title both to real estate and to a beef cattle herd located on the conveyed premises to the grantor and others jointly with rights of survivorship but reserving to the grantor exclusive use and control of the premises and all rents and profits from the premises during the grantor's lifetime empowers the grantor to sell any cattle to the extent that the herd is not reduced below the number of cattle in the herd on the date of the conveyance by the deed, since any decision by the grantor to sell cattle where such sale will not reduce the size of the herd below the original conveyed size is a decision within the scope of the exclusive use and control reservation; the funds realized from such sale are profits within the meaning of the reservation of profits and rents provision, the sale of cattle being the means by which profits are realized from a beef cattle operation, and those profits would be the individual property of the grantor rather than joint property with the other grantees.

### CONCURRENCE BY SHEPHERD, P.J.

2. ANIMALS — DOMESTIC ANIMALS.

*The offspring of a domestic animal, in the absence of an agreement to the contrary, belongs to the owner of the mother of the offspring.*

3. JOINT TENANTS — RIGHT OF SURVIVORSHIP — TRANSFER OF TITLE.

*A joint tenant may not transfer the title to property and deprive the other joint tenant of the right to survivorship where the property stands in the name of the joint tenants with the right of survivorship.*

4. DEEDS — PERSONAL PROPERTY — CATTLE.

*A person who conveys by deed real estate and a herd of beef cattle located on the conveyed premises but reserves to himself the exclusive use and control and all rents and profits of the premises during his lifetime has only the duty to maintain the size of the herd to the size of the herd in existence at the time of the conveyance; any increase in the size of the herd may be sold and the funds realized from such a sale are profits within the meaning of the reservation in the deed.*

*Radka & Lewis* (by *Thomas R. Lewis),* for plaintiff.

*Isadore Isackson,* for defendants.

Before: SHEPHERD, P.J., and D. E. HOLBROOK, JR. and M. F. SAPALA,* JJ.

PER CURIAM. Barbara Weiss, personal representative of the estate of Stanley V. Shubert, deceased, appeals as of right from a judgment granting defendants the proceeds from an escrow account. This case arose when Stanley V. Shubert (hereinafter plaintiff) conveyed by quit claim deed a certain farm and the personal property located on the premises, including a herd of cattle, to himself and defendants, his niece and her then husband, in July of 1974, creating a joint tenancy in that property between himself and defendants. Plaintiff reserved a life estate, including rents and profits, for himself. The relationship between plaintiff and defendants deteriorated, and in 1978 plaintiff brought suit to set aside the deed. Plaintiff was denied relief by the trial court and appealed to this Court.

While the appeal was pending, the parties entered into an agreement to sell some of the cattle in the herd located on the subject premises and to place the profits from that sale into an escrow account to be distributed upon further order of the court or upon resolution of the appeal. On January 8, 1981, in an unpublished decison, *Shubert v Schellie,* Docket No. 45889, we affirmed the order denying plaintiff relief. Plaintiff died on January 10, 1981, and his estate, through the personal representative of the estate, claimed an interest in

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

the escrow money and any personal property owned by plaintiff. On August 24, 1981, an order was entered delaying the release of the escrow funds until a final determination as to what property had passed by deed. An evidentiary hearing was held and on May 1, 1984, judgment was entered in favor of defendants. The personal representative of plaintiff's estate contends that this ruling was in error.

Plaintiff deeded the subject property jointly to himself and the defendants, reserving also a life estate in himself. This is commonly known as the "poor man's will" and is used to avoid probate. This device carries some risk as the grantor relinquishes his ability to later change his mind.

This particular situation is one of first impression in Michigan. The grantor, in a deed creating a joint tenancy, reserved a life estate, inlcuding, all rents and profits from and exclusive use and control of the premises during his lifetime. Due to pending litigation, monies from the sale of cattle were placed in escrow. Plaintiff died in the interim. Shall these monies pass through his estate or to the defendants as joint tenants with rights of survivorship?

At the time of the conveyance of the deed, the herd consisted of 17 cows and a bull. The agreement to sell cattle which was executed by the parties during the pendancy of the prior appeal contained a provision which provided that the herd should not be reduced below 30 head. As plaintiff had reserved his exclusive use and control of all rents and profits, we believe that he was entitled to the monies realized from that sale. Utilizing the standard enumerated in *Amator v Amator,* 114 Ariz 226; 560 P2d 410, 414 (1977), we find that the defendant's rights were adequately protected.

As long as the herd size did not fall below its size as of the date the 1974 deed was executed,[1] we cannot say that defendants were harmed. Plaintiff's reservation of all rents and profits necessarily included the ability to sell the beef cattle, as that is the nature of the business. Indeed, we are hard pressed to determine what, if any, profits could accumulate from a herd of beef cattle if they were not sold. As plaintiff had reserved exclusive use and control, it was his decision as to the amount and time of the sale of any cattle during his lifetime, as long as the herd size did not decrease from its original level.

We agree with *Amator, supra,* where it was held that it is the overall number of animals, and not whether the original animals from the date of the creation of the interest are still alive, that is important.

Accordingly, when the cattle were sold in 1979, it is clear that plaintiff intended those funds to be utilized within his exclusive control. The escrow account was merely created due to pending litigation. Therefore, we award the funds in the escrow account to plaintiff's estate.

Reversed. Cost to appellant.

SHEPHERD, P.J. *(concurring).* I agree with the conclusion reached by the majority and join in its opinion. I write separately only to clarify the legal underpinnings of our analysis. I feel that the result is not only fair and reasonable, but also is consistent with what little authority exists in this area.

The general rule with respect to tame and domestic animals is that the brood belongs to the owner of the dam or mother. *Kellogg v Lovely,* 46

---

[1] We do not address those situations where a decrease in the herd size may be through no fault of the life tenant.

Mich 131, 133; 8 NW 699 (1881). The general rule applies "in the absence of an agreement to the contrary". 4 Am Jur 2d, Animals, § 10, p 257. Thus, if the grantor in the present case had not reserved exclusive use and control and the profits to himself, we would hold in defendants' favor. That result would follow from the creation by the deed of the joint tenancy. Defendants had a present interest as joint tenants in the herd when the gift was made. "Where property stands in the name of joint tenants with the right of survivorship, neither party may transfer the title to the premises and deprive the other of such right of survivorship." *Ames v Cheyne,* 290 Mich 215, 218; 287 NW 439 (1939); see also *Fuller v Fuller,* 123 Mich App 592, 596; 332 NW2d 623 (1983). As joint owners of the herd, defendants would also have joint ownership of the offspring. *Kellogg, supra.*

There was no separate agreement contrary to the general rule in this case. Instead, the conveyance itself was qualified by the grantor's retention of a life estate and the profits. As noted in the majority's opinion, the only possible source of "profits" where beef cattle are concerned is sale of part of the herd. Therefore, the language of the deed takes the conveyance beyond the scope of the general rule.

This leaves us with two remaining inquiries, namely: What rights did the defendants have? and What were the plaintiff's obligations, if any, to the defendants with respect to the herd? Again, I agree with the majority's conclusion that plaintiff's sole obligation as life tenant was to maintain the number of animals in existence at the time of the conveyance, *i.e.,* 18 head of cattle. "[I]t is incumbent upon the life tenant to keep up the original number." 4 Am Jur 2d, Animals, § 11, p 258. Any funds realized from the sale of any increase in the

size of the herd beyond that number constituted the profits referred to in the deed.

The agreement to sell cattle provided that the herd not be reduced below 30 head. Therefore, we need not decide whether plaintiff could have sold 12 more animals and kept that additional profit as well. The plaintiff's death has prevented him from obtaining any further profit from the herd. All animals remaining in the herd passed to defendants, as joint owners with rights of survivorship, by operation of law, whether they were among the original 18 or the offspring thereof. *Kellogg, supra.* The agreement not to reduce the herd to less than 30 head provided more than adequate protection of defendants' rights.